ISADORE ZELLARS v. NATIONAL SURETY COMPANY, Appellant.

**In Banc, February 27, 1908.**

1. **APPEAL BOND: Subsequent Change in Law.** An appeal bond in statutory form obligates the surety to pay the judgment upon affirmance by the appellate court, where the appeal was taken to the court which at the time it was taken had jurisdiction over the appeal, but because of a subsequent change in the law was transferred to another appellate court which by the change was given jurisdiction.

2. ————: ————: **Appeal to Supreme Court: Transfer to Court of Appeals.** Where plaintiff recovered judgment in the circuit court for $4,000, and defendant took an appeal to the Supreme Court which at the time had jurisdiction of appeals in causes where the amount in dispute exceeded $2,500, and gave bond which recited that whereas said defendant "has appealed from said judgment to the Supreme Court" and now if said plaintiff "shall prosecute its appeal with due diligence to a decision in the appellate court," etc., and before the case came on for hearing in the Supreme Court the General Assembly conferred jurisdiction on the Court of Appeals over all cases wherein the amount in dispute did not exceed $4,500 and ordered the transfer to that court of all such cases not submitted, and the Supreme Court so transferred the case and the judgment was affirmed, the surety on the bond cannot escape liability on the plea that the bond was given to secure payment of the judgment only in case it should be affirmed by the Supreme Court.

3. ————: **Vital Clause.** The vital clause in the condition of this bond is that the appellant will pay the judgment rendered by the circuit court if it should on appeal be affirmed.

4. ————: **Statutes a Part.** All statutory bonds are to be construed as though the law requiring and regulating them were written into them.

5. ————: **Increase of Obligation.** The bond at the time it was executed obligated the parties to the payment of the judgment appealed from whenever it should be affirmed by any appellate court having jurisdiction over the appeal, although it recited that the appeal was taken to the Supreme Court, the only court to which it could at the time have been taken, and further recited that appellant should prosecute its appeal with due diligence to a decision "in the appellate court" and perform such judgment as the appellate court might give; and although after

it was given the General Assembly so changed the law as to give jurisdiction over the appeal to the Kansas City Court of Appeals, the State did not thereby undertake to add a new obligation to the bond; the effect of the bond was to stay execution, and for that favor the appellant executed the bond wherein it was stipulated that if the judgment were affirmed in the appellate court it would be paid; and the judgment having been affirmed by the only court that had jurisdiction over the appeal, the surety is liable.

6. ————: ————: Statute: Appeal or Transfer. The form of the appeal bond prescribed by Sec. 809, R. S. 1899, wherein no particular court is named but only the descriptive words "the appellate court" are used, was used to signify either one of the three appellate courts to which the appeal might be taken or to which it might be transferred; and all provisions of the statutes governing appeals and their transfer by one court to another are to be read into the appeal bond.

7. ————: Appeal: Vested Right. An appellant has no vested right to have his cause heard and finally decided by the court which under the law at the time the appeal was taken had jurisdiction of it.

8. ————: Recital: To Supreme Court. The words "to the Supreme Court" recited in the clause, Whereas the defendant "has appealed from said judgment to the Supreme Court of the State of Missouri," were unnecessary, immaterial, and add no force to the bond. The jurisdiction of the appellate court was not determined or affected by them, nor do they affect the obligation of the surety to pay the judgment if it shall be affirmed "by the appellate court." It would have been just as valid if the recital had read, Whereas defendant "has taken an appeal from the judgment" of the circuit court.

9. ————: Parties: Judgment in Name of Guardian: Suit on Bond by Minor. Where the judgment was in the name of the plaintiff, a minor, suing by his natural guardian, and pending the appeal he reaches his legal majority, he can in his own name sue on the appeal bond, if it shows on its face that it was made to his curator for him. In such case the curator is treated as a trustee for the minor, and under the statute which authorizes a suit to be brought in the name of the real party in interest, the minor when he comes of age may maintain the suit on the bond in his own name. It is not necessary that the natural guardian make an assignment of the judgment to him.

10 JUDICIAL UNITY. The several constitutional courts of this State constitute one judicial system, and when one court speaks within its constitutional limits it is the State itself speaking by its court.

Appeal from Jackson Circuit Court.—*Hon. Shannon C. Douglass*, Judge.

AFFIRMED.

*Edward C. Wright, Kimbrough Stone, Frank Hagerman* and *Trimble & Braley* for appellant.

(1) There is no liability on the bond because it was conditioned to perform the judgment of the Supreme Court and not that of the Kansas City Court of Appeals. Am. Brew. Co. v. Talbot, 125 Mo. 388; Keaton v. Boughton, 83 Mo. App. 158; Nofsinger v. Hartnett, 84 Mo. 549; Lionberger v. Krieger, 88 Mo. 160; Bauer v. Cabanne, 105 Mo. 110; Schuster v. Weiss, 114 Mo. 158; Warner v. C. M. L. I. Co., 109 U. S. 357; State ex rel. v. Vogel, 6 Mo. App. 526; Deatherage v. Sheidley, 50 Mo. App. 497; Dist. Co. v. Kermis, 79 Mo. App. 111. (2) The suit could not be maintained by Isadore Zellars alone. The judgment sued upon was in the name of the natural guardian, who was not a party to the cause, and who had made no assignment of the judgment. Gardner v. Armstrong, 31 Mo. 535. It has been universally held by our courts that the obligee of the bond is the proper and only person to sue thereon. Suit cannot be maintained in any other name. State v. Moore, 19 Mo. 371; Meier v. Lester, 21 Mo. 112; Sickles v. McMannus, 26 Mo. 28; Mitchell v. Williams, 27 Mo. 399; Miller v. Wall, 27 Mo. 440; Woodworth v. Woodworth, 70 Mo. 603; Beck v. Haas, 31 Mo. App. 180, 111 Mo. 264.

. *J. L. Minnis* for respondent; *L. C. Boyle* and *W. F. Guthrie*, *amici curiae*.

(1) An appeal bond, conditioned as required by the statute, binds the surety to the performance or payment of the judgment appealed from, in the event the judgment is affirmed on the appeal. In other words, the language "the appellate court," as em-

ployed in such a bond means the court which actually determines the cause on the appeal. Secs. 806-7-8-9, R. S. 1899, same as secs. 2246, 2247, 2248, 2249, R. S. 1889; American Brewing Co. v. Talbot, 125 Mo. 388; State ex rel. v. Klein, 137 Mo. 673; Campbell v. Harrington, 93 Mo. App. 315; Doolittle v. Dininny, 31 N. Y. 350.    (2) The appeal bond sued on is conditioned as required by the statute, and, therefore, the Surety Company is liable.    Authorities, supra.

VALLIANT, J.—This is a suit on an appeal bond, in which the defendant is surety.    In November, 1898, the plaintiff, then a minor, suing by his mother as his natural guardian, recovered a judgment in the Carroll Circuit Court for $4,000 against the Missouri Water and Light Company.    An appeal was taken to the Supreme Court by the defendant in that case, who executed this appeal bond in the penalty of $8,500 with the defendant in this case as surety.    While that appeal was pending in this court, the General Assembly, by an act approved March 20, 1901, conferred on the St. Louis Court of Appeals and the Kansas City Court of Appeals jurisdiction of appeals and writs of error in cases where the amount in dispute exclusive of costs did not exceed the sum of $4,500, and directed this court to transfer all cases within that limit then pending here, which had not been submitted, to the proper court of appeals.    In obedience to that law this court, April 17th, 1901, transferred this cause to the Kansas City Court of Appeals, where it was heard, and March 3, 1902, the judgment of the circuit court was affirmed. Afterwards, January 12, 1903, the plaintiff, having then attained his majority and the judgment being unsatisfied, brought this suit against this defendant as the surety on the appeal bond.    The suit resulted in a judgment in the circuit court in favor of the plaintiff for $5,332.60 and costs, from which judgment the defendant has appealed.

I. The defendant contends that it is not liable as for a condition broken in the appeal bond sued on, because, it says, the bond, as by its terms will appear, was given to secure the payment of the judgment if it should be affirmed by the Supreme Court, not if it should be affirmed by the Kansas City Court of Appeals, and since the judgment has never been affirmed by the Supreme Court there has been no breach of the condition. That contention raises the vital question in this case.

The bond in question is in these words:

"*Know All Men by These Presents*: That the Missouri Water and Light Company as principal, and the National Surety Company, a corporation, as surety, are held and firmly bound unto Mary Zellars, the natural guardian and curator of Isadore Zellars, in the penal sum of eight thousand five hundred dollars ($8,500) good and lawful money of the United States, well and truly to be paid and for the faithful payment of which the above bounden obligors hereby bind themselves, their successors and assigns firmly by these presents.

"The conditions of the above obligation are such, that, whereas, on the 18th day of November, 1898, in a certain action pending in the circuit court of Carroll county, Missouri, at Carrollton, at the November term thereof, wherein the said Isadore Zellars, by his natural guardian and curator, Mary Zellars, was plaintiff, and the said Missouri Water and Light Company was defendant, the said plaintiff recovered a judgment against the Missouri Water and Light Company in the sum of four thousand dollars and costs, and,

"Whereas, The Missouri Water and Light Company has appealed from said judgment and the order of said court to the Supreme Court of the State of Missouri, and,

"Whereas, the circuit court of Carroll county, Mis-

souri, fixed the amount of said bond at $8,500 and allowed the appellant ten days in which to file said bond conditioned as by law required:

"Now, therefore, if the Missouri Water and Light Company shall prosecute its appeal with due diligence to a decision in the appellate court and shall do and perform such judgment as shall be given by such court, or such as the appellate court may direct the circuit court to give, and if the said Missouri Water and Light Company shall also comply with and perform the judgment of the circuit court of Carroll county, Missouri, if the said judgment or any part thereof be affirmed by the appellate court and in so far as it may be affirmed, and shall well and truly pay all damages and costs that shall be awarded against it by the appellate court, then the above obligation shall be null and void; otherwise to remain in full force and effect."

Section 809, Revised Statutes 1899, prescribes when an appeal may stay execution: "First, when the appellant shall be an executor," etc. (not applicable here); "second, when the appellant, or some responsible person for him, together with two sufficient securities, to be approved by the court, shall, during the term at which the judgment appealed from was rendered, enter into a recognizance to the adverse party in a penalty of double the amount of whatever debt, damages and costs, . . . have been recovered by such judgment, together with the interest that may accrue thereon, and the costs and damages that may be recovered in any appellate court upon the appeal, conditioned that the appellant will prosecute his appeal with due diligence to a decision in the appellate court and shall perform such judgment as shall be given by such court, or such as the appellate court may direct the circuit court to give, and if the judgment of such court, or any part thereof, be affirmed, that he will comply with and perform the same, so far

as it may be affirmed, and will pay all damages and costs which may be awarded against the appellant by any appellate court.'' The bond in this case was conditioned in the language of the statute except that in the last part of the clause stating the condition it says: ''pay all damages and costs that shall be awarded against it by the appellate court'' whereas the statute in that connection says ''any appellate court.'' But that is immaterial in this case because no damages or costs were awarded by the appellate court. The vital clause in the condition of this bond is that the appellant will pay the judgment rendered by the circuit court if it should be affirmed. It is recited in the bond that the appeal was taken to the Supreme Court, but elsewhere in the bond the court whose judgment in the appeal is to be observed is designated as ''the appellate court.'' Appellant contends that the Supreme Court having been named as the court to which the appeal was taken all subsequent mention of the appellate court necessarily meant that court.

All statutory bonds are to be construed as though the law requiring and regulating them was written in them. It will, therefore, help us to understand the force of the decisions interpreting appeal bonds to which we are referred in the briefs if we will glance back and observe the changes that have been made in our law on this subject.

Until the adoption of the Constitution of 1875 there was but one court to which appeals from the circuit court could be taken, to-wit, the Supreme Court, but that Constitution created the St. Louis Court of Appeals and gave it general appellate jurisdiction in its prescribed territory. In certain classes of cases appeals could be taken from the judgments of that court to the Supreme Court; one of which was when the amount in dispute was more than $2,500; where the amount in dispute was that sum or under, the judg-

ment of the Court of Appeals was final unless there was some other ground giving this court jurisdiction.

In 1884 the Constitution was amended creating the Kansas City Court of Appeals with jurisdiction of the same kind as the St. Louis Court of Appeals, but abolishing appeals from the Courts of Appeals to the Supreme Court, and providing that in those causes in which formerly such appeals could be taken, appeals should be taken directly from the trial court to the Supreme Court. This change left the two courts of appeals with exclusive jurisdiction (subject to certain supervisory provisions) of appeals where the amount did not exceed $2,500. By the same amendment the General Assembly was given authority to increase or diminish the pecuniary limit of jurisdiction of the courts of appeals. So the law was when the judgment of $4,000 in favor of the plaintiff in this case against the Missouri Water and Light Company was rendered in 1898, and so it remained until the Legislature in 1901 increased the jurisdiction of the Courts of Appeals to include cases involving $4,500.

The cases to which we are referred construe appeal bonds taken at various stages of the law's progress, therefore, each of those cases is to be understood as applying to the law as it was when the bond was executed, and it does not cover a bond taken under an altered phase of the law.

Let us here note the various changes that have been made in this statute:

Until the establishment of the St. Louis Court of Appeals in 1875 the condition prescribed by the statute for the appeal bond was: "That the appellant will prosecute his appeal with due diligence to a decision in the Supreme Court, and shall perform such judgment as shall be given by the Supreme Court, or such as the Supreme Court may direct the circuit court to give, and if the judgment of such court, or any part

thereof, be affirmed, that he will comply with and per-
form the same, or so far as it may be affirmed, and
will pay all damages and costs which may be awarded
against the appellant by the Supreme Court.'' [G. S.
1865, p. 685.]

After the establishment of the St. Louis Court of
Appeals, all appeals within its territory went first to
that court and in certain cases appeals could be taken
from that court to the Supreme Court. To meet that
condition the General Assembly in 1879 amended the
statute so that the condition of the appeal bond should
be: ''That the appellant will prosecute his appeal with
due diligence to a decision in the appellate court, and
shall perform such judgment as shall be given by such
court or such as said court may direct the circuit court
or St. Louis Court of Appeals to give, and if the judg-
ment of such court, or any part thereof, be affirmed,
that he will comply with and perform the same, so far
as it may be affirmed, and will pay all damages and
costs which may be awarded against appellant by any
appellate court.'' [Sec. 3713, R. S. 1879.]

In 1885 the statute was again amended to meet
the again altered condition caused by the establishment
of the Kansas City Court of Appeals and the changes
relating to the jurisdiction in the several appellate
courts, by which amendment the condition of the appeal
bond was: ''That the appellant will prosecute his ap-
peal with due diligence to a decision in the appellate
court and shall perform such judgment as shall be giv-
en by such court, or such as said court may direct the
circuit court, or the St. Louis Court of Appeals or Kan-
sas City Court of Appeals to give, and if the judg-
ment of such court, or any part thereof, be affirmed,
that he will comply with and perform the same, so far
as it may be affirmed, and will pay all damages and
costs which may be awarded against the appellant by
any appellate court.'' [Laws, 1885, p. 216.]

Afterwards, in 1889, the statute was again amended and put in the form we now have it. [Sec. 2249, R. S. 1889; sec. 809, R. S. 1899, hereinabove already copied.]

Let us bear these various changes of the statute in mind when we are reading the cases to which we are referred.

The earliest case cited is State ex rel. v. Vogel, 6 Mo. App. 526. Before the establishment of the St. Louis Court of Appeals, the only court, as we have already said, to which an appeal could be taken from the judgment of a circuit court was the Supreme Court, and therefore the statute which prescribed the form of the appeal bond made no reference to any other appellate court, but in place of the words "appellate court" as now appear in the statute the words "the Supreme Court" alone were used. The judgment in that case was rendered in 1877, after the establishment of the St. Louis Court of Appeals and, under the law as it then was, the appeal lay in the first instance to the St. Louis Court of Appeals, but from the judgment of that court an appeal could be taken to the Supreme Court. The appeal was taken to the St. Louis Court of Appeals where the judgment of the circuit court was affirmed and from the judgment of the St. Louis Court of Appeals an appeal was taken to the Supreme Court. But although the judgment of the circuit court was rendered in 1877, yet it was before the statute prescribing the condition of the appeal bond had been amended, and therefore the bond given in that case was worded in the language of the General Statutes of 1865, page 685. While the appeal was pending in the Supreme Court the plaintiff applied to the clerk of the circuit court to issue execution on his judgment, but the clerk refused; then the plaintiff sued out a writ of mandamus to compel the clerk to issue the execution. The question in that case was: Did the appeal bond that the

defendant had given in the circuit court stay the execution pending the appeal in the Supreme Court? The bond given in the circuit court followed, as we have said, the form prescribed in the statute as it was in 1865, to-wit: "that the appellant would prosecute his appeal with due diligence to a decision in the Supreme Court" and "perform such judgment as shall be given by the Supreme Court, or such as the Supreme Court may direct the circuit court to give." It was held that that bond did not stay the execution while the cause was pending in the Supreme Court; because it was given to cover an appeal from the judgment of the circuit court, not an appeal from the judgment of the Court of Appeals, and because it was not entered into during the term at which the judgment appealed from, that is, the judgment of the Court of Appeals, was rendered, and was not approved by the court that rendered that judgment. The effect of the decision was that to stay execution while the cause was pending in the Supreme Court the appellant should have given the bond in the Court of Appeals during the term at which the judgment was rendered and it should have been approved by that court.

Nofsinger v. Hartnett, 84 Mo. 549, arose also when the law was that an appeal lay from a judgment of the Court of Appeals to the Supreme Court, and what is there said must be understood with that fact in mind. The appeal was taken to the Court of Appeals, the bond was conditioned that appellant would prosecute his appeal to a decision "in the St. Louis Court of Appeals, and perform such judgment as shall be given by the St. Louis Court of Appeals, or such as the St. Louis Court of Appeals may direct the circuit court to give." The Court of Appeals reversed the judgment, but on appeal to this court the judgment of the Court of Appeals was reversed and that of the circuit court affirmed and the mandate went from this court direct to

the circuit court. It was held that since there had been no affirmance of the judgment by the court specifically named in the bond the surety was not liable. But this court said that if instead of affirming the judgment of the circuit court and sending its mandate there, this court had reversed the judgment of the Court of Appeals and directed that court to affirm the judgment of the circuit court the bond would have covered the case. The difference between the law as it now is and as it then was, and the difference between the specifications in the bond in that case and those in the case at bar, are apparent.

Bauer v. Cabanne, 105 Mo. 110, was a suit on an appeal bond given in a forcible entry and detainer case. There had been a judgment for the plaintiff in the justice's court, an appeal to the circuit court where judgment was rendered dismissing the appeal because it was not prosecuted within the time prescribed by statute, and an appeal to the Court of Appeals where the judgment of the circuit court was affirmed. The appeal bond given in the circuit court was conditioned to perform such judgment as the Court of Appeals might render or order the circuit court to render and pay all damages and costs that might be awarded by the Court of Appeals. Under that bond it was contended that the defendants were liable for the rents and profits and damages awarded by the justice, etc. But it was held that as the only judgment rendered by the circuit court was of dismissal of the appeal from the justice and the only judgment rendered by the Court of Appeals was affirming the judgment of dismissal, there was no judgment in either court for rents and profits or damages. That decision bears but little on this case.

Schuster v. Weiss, 114 Mo. 158, was a suit on an appeal bond given in an ejectment suit wherein the plaintiff had recovered a judgment for possession and

one cent damages and costs. The judgment was rendered before the amendment of the Constitution of 1884 and therefore 'at a time when an appeal in an ejectment suit went first to the St. Louis Court of Appeals and thence to the Supreme Court. The bond was conditioned to cover the case in the Court of Appeals and also in the Supreme Court if taken to the Supreme Court by appeal from the judgment of the Court of Appeals. But while the cause was yet in the Court of Appeals the constitutional amendment of 1884 above mentioned was adopted and an Act of the General Assembly of March 4th, 1885, passed, under which the cause was transferred to the Supreme Court without having passed under the judgment of the Court of Appeals and the judgment of the circuit court was affirmed in this court. It was held that the sureties were not bound because their contract was to stand for such judgment as the Court of Appeals might render or such as the Supreme Court might render if the cause should come here on appeal from the judgment of the Court of Appeals. This court held that the State could not make a law retroactive to write into a contract a condition that the parties had not written into it when it was made. That decision sustains the appellant's contention in this case on one proposition, to-wit, if the bond at the time it was executed did not bind the appellant to pay the judgment on its being affirmed by the Court of Appeals, subsequent legislation could not impose such obligation.

In Am. Brewing Co. v. Talbot, 125 Mo. 388, there was a judgment in the circuit court for $4,316.65. At that time the pecuniary limit of jurisdiction in the Court of Appeals was $2,500. Nevertheless, the appeal was taken to the St. Louis Court of Appeals and the bond given to perform such judgment as the St. Louis Court of Appeals should render or order the circuit court to render. The St. Louis Court of Ap-

peals transferred the cause to this court, and after it reached here the respondent moved the court to require appellant to give a new bond and that motion was sustained. The authority of the court to require a proper bond in such circumstances was the only point decided in that case.

State ex rel. v. Klein, 137 Mo. 673, was a proceeding by mandamus to require the trial judge to approve an appeal bond. It appears from the report of the case that on a final hearing a receiver had been appointed to take charge of the affairs of a partnership concern and wind them up. An appeal was taken from the decree and pending the appeal a bond conditioned according to the statute in the penalty of $500 was tendered to the trial judge, which he refused to approve on the ground that the amount was not sufficient. This court held that the approval of the bond was in the judicial discretion of the judge, and there being nothing in the facts of that case to indicate that the discretion had not been judicially exercised the writ was denied.

In Cranor v. Reardon, 39 Mo. App. 306, the judgment was rendered in 1882, when the appeal could be taken only to the Supreme Court, coming, as it did, from a circuit court not within the territorial jurisdiction of the St. Louis Court of Appeals. The bond was conditioned to prosecute the appeal with diligence to the Supreme Court and perform such judgment as the Supreme Court should render or might direct the circuit court to render. While the appeal was pending the Kansas City Court of Appeals was created and the cause coming within its jurisdiction was transferred to that court, where the judgment was affirmed. It was held that the bond did not cover the case.

Brookshier v. McIlrath, 112 Mo. App. 687, was of similar facts and the ruling was the same.

Keaton v. Boughton, 83 Mo. App. 158, is relied on

by appellant and reasonably so because it comes nearer in its facts to this case than any other to which our attention has been drawn, and yet there is an important difference between the facts of that case and those of this. That was an action of ejectment in which, in 1897, after the amendment of the Constitution that we have mentioned, the plaintiff recovered judgment for possession of the land, damages and monthly rentals. The appeal was taken to the Supreme Court where only it could have been taken, but the appeal bond recited that the appeal was taken "to the Court of Appeals at St. Louis Mo.," then the bond was conditioned that the appellant prosecute his appeal with due diligence to a decision in the appellate court and perform such judgment as the appellate court may give or direct the circuit court to give, etc., following the language of the statute. The bond seems to have been treated by the parties as effecting a stay of execution and its peculiar defect seems to have been overlooked until after the judgment had been affirmed by the Supreme Court, then it was attempted to recover on the bond by treating the recital that the appeal had been taken to the Court of Appeals as surplusage, but the St. Louis Court of Appeals held that that could not be done, that the term "appellate court" used in the condition of the bond meant the court referred to in the recital, that is, "the Court of Appeals at St. Louis, Mo.," and so holding rendered judgment for the defendants in the bond. The court in its opinion said that the bond was a nullity and should not have been accepted by the circuit court, and it also said that it was the privilege of the plaintiff to have objected to it either at the time it was offered in the circuit court or at any time thereafter while the appeal was pending, citing Am. Brewing Co. v. Talbot, *supra*. The difference between that case and the case at bar is that in that case the recital was untrue, and if the plaintiff had paid attention to it and had of-

fered an objection to it, either before it left the circuit court or after it came to the Supreme Court, he could have had the *supersedeas* vacated until a sufficient bond should be given.   But in the case at bar the recital was true, the appeal was taken to the Supreme Court and at that date it could not have been taken to any other court, there was no objection the plaintiff could have urged against the bond.

We have thus gone with some care over those cases because they are relied on by counsel as laying down the principles that should guide us in the decision in the case we now have in hand, but, as we have seen, each of those cases has its own peculiar features which distinguish it from this.   Here we have an appeal bond in the language of the statute, in the conditions expressed there is no specification of any particular appellate court, but it says if the appellant "shall prosecute its appeal with due diligence to a decision in the appellate court and shall do and perform such judgment as shall be given by such court, or such as the appellate court may direct the circuit court to give and if the said Missouri Water and Light Company shall also comply with and perform the judgment of the circuit court of Carroll County, Missouri, if the said judgment or any part thereof be affirmed by the appellate court and in so far as it may be affirmed," etc., then the obligation to be void, otherwise to remain in full force.

It is contended in behalf of the surety company, the appellant in the case at bar, that since it is recited in the bond that the appeal was taken to the Supreme Court, the term "the appellate court" thereafter appearing in the condition of the bond, necessarily means the court named in the recital, that is, the Supreme Court.   Whether or not that contention be entirely sound it is at least not without reason.   When this bond was executed there were three appellate courts in our judicial system—three courts to either of which the

term "the appellate court" could be made to apply, therefore when in the recital the Supreme Court is mentioned by name, the natural inference, if there was nothing else to be considered, would be that the appellate court thereafter in the bond referred to was the appellate court previously named, that is, the Supreme Court. Certainly if the cause had not been transferred, if there had been no change in the law and if this court had retained the cause and rendered judgment affirming the judgment of the circuit court it could not with reason have been contended that the words "the appellate court" did not refer to the Supreme Court. We may assume therefore that when the parties signed this bond they had in mind that the appeal was going to the Supreme Court and they understood that the words "the appellate court" meant the Supreme Court.

But after the bond was executed and, by the force of it, execution of the plaintiff's judgment was stayed, the General Assembly passed the act transferring the jurisdiction in cases involving no more than $4,500 from the Supreme Court to the Courts of Appeals, and by force of that act the cause referred to in this bond was transferred to the Kansas City Court of Appeals, where it was heard and the judgment of the circuit court affirmed. Now the surety on the bond says, I never undertook to stand security that a judgment affirmed by the Kansas City Court of Appeals would be paid, and the State had no right to add a new obligation to my bond and if the act of the General Assembly under which the cause was transferred to the Court of Appeals is to be given such a construction it is unconstitutional as impairing the obligation of my contract.

On the other hand, the plaintiff in the judgment says the General Assembly had the power to transfer the appellate jurisdiction in such cases from one court to the other and unless the obligation of the bond is

construed to cover the case in the court to which it is transferred then my security is destroyed, the obligation of the contract given for my protection is impaired.

The act of the General Assembly conferring jurisdiction in such cases on the courts of appeals and directing that such cases then pending in the Supreme Court be transferred to the proper court of appeals, does not expressly say that the appeal bond given shall cover the cases as well in the courts of appeals as they did in the Supreme Court, but that is immaterial, because if it had said so the act in that particular would have been unconstitutional if the appellant's theory is otherwise correct, because if the bond did not otherwise cover the case the Legislature could not by a retrospective act enlarge its obligation. If the bond at the time the parties signed it did not obligate them to satisfy the judgment of the circuit court when the same should be affirmed by any one of the three appellate courts which then had or might thereafter lawfully have jurisdiction to hear and determine the appeal then the appellant is not liable  in this action. If on the other hand the bond at the time it was executed obligated the parties to the payment of the judgment appealed from whenever it should be affirmed by any appellate court having jurisdiction then the surety company in this case is liable.

Appellant invokes the *strictissimi juris* rule of construing the contract of a surety. That rule has come down to us with judicial comments to the effect that the surety is the favorite of the law and his rights must be especially guarded. Whether the reason for the rule in its origin would apply to the modern surety company which is incorporated to carry on the business of going security for compensation and profit, it is not necessary perhaps now to inquire, because the rule goes no farther than to say that the surety is not bound

beyond the plain meaning of his contract gathered from the language employed and viewed in the light of the circumstances well known to all the parties when the contract was executed. Now, what were the circumstances? A judgment for $4,000 had been rendered in the circuit court against a defendant who had asked for and obtained an appeal; to the end that the defendant might have relief against the errors, if errors there were in the judgment, and to render his appeal effective to stay execution while it was pending, he executed this bond wherein it was stipulated that if the judgment was affirmed in the appellate court it would be paid. By force of the statute the giving of the bond stayed the execution, the defendant obtained the benefit and the plaintiff suffered the stay.

A bond executed for a purpose prescribed by a statute and executed in the form prescribed by the statute is to be interpreted as having the statute written into it, indeed all contracts are to be construed as if the law governing the subject was incorporated in them. And that rule of construction applies as well to the surety as to the principal. We have already noted the changes that have been made in the prescribed form of appeal bonds to meet the changes in the conditions of the judicial department: first, when there was but one appellate court; next, after the St. Louis Court of Appeals was created, and last, after the Kansas City Court of Appeals was created and changes made in the jurisdiction of the three appellate courts.

By section 3 of the Constitutional Amendment of 1884, the General Assembly was given certain powers, among which were to increase or diminish the pecuniary limit of jurisdiction of the courts of appeals and to provide for the transfer of causes from one court of appeals to another and for the hearing and determination of the same by the court to which they are transferred. The exercise of the power of increasing

the limit of pecuniary jurisdiction necessitated the transfer of causes within the increased limit from this court to one of the courts of appeals. By section 6 of the same amendment provision was made for the transfer of causes, under certain circumstances, from a court of appeals to this court. By an act of the General Assembly approved March 18th, 1885, which is now section 1657, Revised Statutes 1899, it is provided that if on appeal or writ of error a cause be sent to a wrong appellate court, the court to which it is sent should immediately transfer it to the proper court and that court should take jurisdiction of it and proceed with it as if it had come in due course from the trial court. It was in view of those constitutional amendments and of the statutes in relation to the transfer of causes from one court to another that the General Assembly enacted the statute prescribing the form of appeal bonds as it now appears in section 809, Revised Statutes 1899, wherein no particular court is named but only the descriptive words "the appellate court" are used. The form was used to signify either one of the appellate courts to which the appeal might be taken or to which it might be transferred. All these provisions of the law the parties to this contract knew and the bond was executed to conform to the law, the law is to be read into it. Unless it can be said that a party has a vested right to have his cause heard and finally decided by the court which under the terms of the law at the time the appeal was taken had jurisdiction of it the argument of the appellant in this case must fall. A party has no such right. The judicial department of the State Government is a composite unit and although to each of the parts a specific office is assigned, yet the State has the right to rearrange the system and to reassign the several duties. In the face of changing conditions the possession of that right and the exercise

of that authority is essential to the harmonious administration of the State government.

Suppose it was, as appellant contends that it was, understood by all the parties at the time that the appeal would go to the Supreme Court, as indeed the law as it then was so required, is the bond to be construed to mean that although the judgment was affirmed by the only court which under the law at the date of the affirmance had jurisdiction of it the surety is not bound because the affirmance was not by the Supreme Court? It was said in the argument that the surety might be willing to take the risk of a judgment being affirmed by one court but not by another. But that argument embraces an element of speculation that we cannot consider and it ignores the fact that the several constitutional courts in this State constitute one judicial system and when one court speaks, speaking within its constitutional limits, it is the judicial department of the State that speaks, it is the State itself speaking by its court. The utterance of one court within its own bounds is as much the utterance of the judicial department of the State, is as much the utterance of the State itself, as that of any other constituent member of the same judicial system. It is the State in its sovereignty that renders the judgment, and if it chooses to change the jurisdiction from one court to another it has the power to do so and the jurisdiction exercised is the same whether exercised by one court or another.

We do not say that an appeal bond may not be so worded by accident or design as to limit the liability of the surety to the affirmance of a judgment by a specified court, for the cases above cited show that that may be done, but we are now speaking of this bond which is worded in the language of the statute and which is conditioned for the performance of the judgment when affirmed by "the appellate court," which

means the court that had lawful jurisdiction to affirm the judgment.

But it is argued that since in the recital in the bond the words "the Supreme Court" are used, referring to the court to which the appeal was taken, therefore the words "the appellate court" thereafter occurring must be construed as meaning the Supreme Court. Suppose those words had not been in the recital, suppose that the recital had been simply to the effect that the judgment for $4,000 had been rendered in the circuit court and from that judgment the defendant had taken an appeal and then followed the condition in these words: "Now, therefore, if the Missouri Water and Light Company shall prosecute its appeal with due diligence to a decision in the appellate court and shall do and perform such judgment as shall be given by such court or such as the appellate court may direct the circuit court to give, and if the said Missouri Water and Light Company shall also comply with and perform the judgment of the circuit court of Carroll county, Missouri, if the said judgment or any part thereof be affirmed by the said appellate court and in so far as it may be affirmed," etc., would there be any ground to question that the bond covered the case in the Court of Appeals? In the case supposed no court is specified but only the descriptive term "the appellate court" is used. What difference does it make that instead of simply saying that an appeal was taken, the recital says that the appeal was taken to the Supreme Court? The office of a recital in such case is usually to state some fact without which statement it would not appear on the face of the bond for what purpose it was executed. Therefore it was proper to show by the recitals that this particular judgment was rendered in the Carroll Circuit Court, and that the defendant had taken an appeal because those facts would not otherwise appear on the face of the bond. But a re-

cital of a fact that already appears on the face of the bond in express words or by necessary inference is unnecessary, is immaterial and has no force. At the date this judgment was rendered and this appeal was taken the Supreme Court was the only one to which the appeal could be taken, therefore when the recital said that a judgment for $4,000 was rendered and that an appeal was taken, there was no necessity for saying that it was taken to the Supreme Court. Those words therefore added nothing to the bond; if there were any force in the argument that it appears on the face of the bond that the appeal was taken to the Supreme Court, the face of the bond would show that fact as well without the words "the Supreme Court" in the recital as with them, and the argument would be applied with equal force.

Construing this bond in the light of the law as it was when it was executed, and reading the law into it, we hold that it was intended to secure the payment of the judgment appealed from when that judgment should be affirmed by that appellate court which when the judgment of affirmance was pronounced had appellate jurisdiction of the cause.

II. Appellant also contends that the plaintiff cannot maintain a suit on this bond because it says that the judgment from which the appeal was taken was in the name of Mary Zellars, natural guardian of the plaintiff, and that she has made no assignment of the judgment. This contention arises out of a mistake in fact. The petition in this case states that the plaintiff, Isadore Zellars, suing by his natural guardian and curator, obtained the judgment in question, and the answer expressly admits that fact. The evidence shows that the plaintiff was a minor when the judgment was recovered and when the appeal bond was given in November, 1898, but that he attained his majority in September, 1899.

The bond was given to "Mary Zellars the natural guardian and curator of Isadore Zellars" as obligee. It would have been more proper if the plaintiff himself, though a minor, had been named as the obligee in the bond, because the title to a minor's estate vests in him, not in his guardian or curator, but it makes no difference since the bond shows that it was made to his curator for him. In such case the curator will be treated as a trustee for the minor, and under our statute which authorizes a suit to be brought in the name of the real party in interest, the minor when he comes of age may maintain the suit in his own name.

We find no error in the record. The judgment is affirmed.

*Gantt, C. J., Fox, Lamm* and *Graves, JJ.,* concur; *Burgess* and *Woodson, JJ.,* concur in the result.